IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RICHARD PISONI AND
DARREN LINDSEY,

Plaintiffs,

v.

STATE OF ILLINOIS, ILLINOIS
STATE POLICE, GREG ROBINSON,
JOSEPH KOLLINS, SCOTT KOERNER,
ROB HALEY, LANCE HINKLE, CRAIG
DEMERAT and CHARLES TOLBERT,

Defendants.                                                No. 12-0678-DRH
_____

MARK CAMERON, BRIAN CLEMENTS,
BRIAN HOSAPPLE, and
STEVEN KERLEY,

Plaintiffs,

v.

STATE OF ILLINOIS and
STATE OF ILLINOIS POLICE,

Defendants.                                                No. 12-0755-DRH

MEMORANDUM AND ORDER

HERNDON, Chief Judge:

I. Introduction and Background

Now before the Court is defendants' motion to dismiss under both Rule

12(b)(1) and Rule 12(b)(6) (Doc. 25). Defendants claim that the State of Illinois is not an employer under the Age Discrimination in Employment Act ("ADEA"); that plaintiffs have failed to state a claim under the ADEA or for retaliation; that plaintiffs' state law claims are barred by sovereign immunity; that plaintiffs' state law claims are preempted by the Illinois Human Rights Act; that the conspiracy claims are barred by the intra-corporate conspiracy doctrine and that the state law claims fail to state claims for relief. Plaintiffs oppose the motion (Docs. 27 & 28). Defendants also filed a supplemental brief arguing that plaintiffs' ADEA claims against the State of Illinois should be dismissed for failure to exhaust administrative remedies (Doc. 41). Plaintiffs responded to the supplement (Docs. 42 & 45). Based on the following, the Court grants in part and denies in part the motion to dismiss and denies as moot the supplement to the motion to dismiss.

After consolidation, plaintiffs Richard Pisoni, Darren Lindsey, Mark Cameron, Brian Clements, Brian Hosapple, and Steven Kerley filed an eighteen-count joint amended complaint against the State of Illinois, Illinois State Police ("ISP"), Greg Robinson, Joseph Kollins, Scott Koerner, Rob Haley, Lance Hinkle, Craig Demerat, and Charles Tolbert on October 25, 2012 (Doc. 23).[1] The joint amended complaint contains claims of age discrimination, hostile work environment and retaliation pursuant to the ADEA, 29 U.S.C § 623(b); state law

---

[1] On September 26, 2012, the Court granted a motion to consolidate cause numbers 12-0678-DRH and 12-0755-DRH and directed that all further pleadings be filed in 12-0678 (Doc. 19). Thereafter, the Court directed the plaintiffs to file a joint amended complaint (Doc. 22).

claims of intentional infliction of emotional distress and civil conspiracy.[2] Specifically, Count I is an ADEA claim by Mark Cameron against the Illinois State Police and the State of Illinois; Count II is an ADEA claim by Brian Clements against the Illinois State Police and the State of Illinois; Count III is an ADEA claim by Brian Holsapple against the Illinois State Police and the State of Illinois; Count IV is an ADEA claim by Steven Kerley against the Illinois State Police and the State of Illinois; Count V is an ADEA claim by Richard Pisoni against the Illinois State Police; Count VI is an ADEA claim by Darren Lindsey against the Illinois State Police; Count VII is a claim for intentional infliction of emotional distress by Mark Cameron against the Illinois State Police and the State of Illinois; County VIII is a claim for intentional infliction of emotional distress by Brian Clements against the Illinois State Police and the State of Illinois; Count IX is a claim of intentional infliction of emotional distress by Brian Holsapple against the Illinois State Police and the State of Illinois; Count X is a claim for intentional infliction of emotional distress by Steven Kerley against the Illinois State Police and the State of Illinois; Count XI is a claim for intentional infliction of emotional distress by Richard Pisoni against the individual defendants; Count XII is a claim for intentional infliction of emotional distress by Darren Lindsey against the individual defendants; Count XIII is a claim for civil conspiracy by Mark Cameron

---

[2] The Court notes that the joint amended complaint refers to plaintiff Lindsey as "Lindsey" and "Lindsay." The Court reviewed the original complaint and the original complaint refers to plaintiff Lindsey as "Lindsey." The Court assumes that is the correct spelling and will utilize "Lindsey" when referring to plaintiff Lindsey.

against all defendants; Count XIV is a claim for civil conspiracy by Brian Clements against all defendants; Count XV is a claim for civil conspiracy by Brian Holsapple against all defendants; Count XVI is a claim for civil conspiracy by Steven Kerley against all defendants; Count XVII is a claim for civil conspiracy by Richard Pisoni against the individual defendants and Count XVIII is a claim for civil conspiracy by Darren Lindsey against all defendants.[3]

Generally, the joint amended complaint alleges that plaintiffs are employees of the ISP who claim that defendants violated the ADEA by allowing plaintiffs to be subjected to a hostile work environment by forcing plaintiffs to transfer from the Southern Special Weapons and Tactics Team ("SWAT") and replacing plaintiffs with younger employers.  Plaintiffs Hosapple and Kerley further allege that they were retaliated against for refusing to participate in the age discrimination. Specifically, plaintiffs allege that "[i]n late 2010 and early 2011, members of the chain of command for Plaintiffs, including but not limited to Greg Robinson, Joseph Kollins, Scott Koerner, Rob Haley, directed and encouraged members of the SWAT team to discriminate against employees over the age of 40 by encouraging them to isolate members of the team over the age of 40, harass members of the team over the age 40, and ignore direct commands from any superior officer over the age of 40." (Doc. 23. ¶ 37).  Further, plaintiffs allege that defendants directed younger members of the SWAT team to mock, verbally attack,

---

[3] In the original complaint, Pisoni and Lindsey brought the civil conspiracy and intentional infliction of emotional distress claims against defendants Robinson, Kollins, Koerner, Haley and Tolbert (Doc. 2-2, ps. 19-23).

harass, criticize, isolate and ignore plaintiffs in a deliberate effort to create a hostile work environment and force them to leave the SWAT team. The joint amended complaint also alleges that defendants Robinson, Kollins, Hinkle, Demaret and Tolbert knowingly made false reports to plaintiffs' supervisors which called into question plaintiffs' work performance, which these defendants know to be false. Moreover, plaintiffs claim that after receiving right to sue letters from the EEOC, they were transferred from the SWAT team to patrol, causing them to suffer decreased wages and benefits.

As the motion and supplement are ripe, the Court turns to address the merits.

## II. Motion to Dismiss Standard

The purpose of a Rule 12(b) motion to dismiss is not to decide the merits of the case. A Rule 12(b)(6) motion tests the sufficiency of the complaint, *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990), while a Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction. *Long v. Shorebank Development Corp.,* 182 F.3d 548, 554 (7th Cir. 1999). In reviewing a motion to dismiss under either rule, the Court takes as true all factual allegations in plaintiffs' complaint and draws all reasonable inferences in their favor. *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir. 2007); *Long,* 182 F.3d at 554.

To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that

the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O. C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 550 U.S. at 563.

Surviving a Rule 12(b)(1) motion to dismiss is more difficult. *United Phosphorus, Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir. 2003). Federal courts are courts of limited jurisdiction; "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The plaintiff bears the burden of establishing that a district court has proper jurisdiction of an action. *Transit Express*, 246 F.3d at 1023. A defendant arguing that the plaintiff has not met this burden with respect to an action may move for dismissal under Rule 12(b)(1). A challenge based on the Court's lack of subject matter jurisdiction is properly brought in a motion under Federal Rule of Civil Procedure 12(b)(1), rather than as a motion to dismiss under Rule 12(b)(6). See also Fed.R.Civ.P. 12(h)(3) (court must dismiss for lack of subject matter jurisdiction). Under Rule 12(b)(1), consideration of evidence extrinsic to the pleadings is appropriate. *Hay v. Indiana State Bd. of Tax Commis*, 312 F.3d 876, 879 (7th Cir. 2002) ("the district court had not only the right, but the duty to look beyond the allegations of the complaint to determine that it had jurisdiction to hear the landowners' claim"). With these principles in mind, the Court turns to the allegations of the joint amended complaint.

### III. Analysis

**Employer under the ADEA**

First, defendants argue that the State of Illinois is not an "employer" under the ADEA. Specifically, defendants maintain that ISP is the proper defendant in that it has the actual hiring and firing responsibility and not the State of Illinois. The Court agrees.

Title VII and the ADEA "use virtually the same definition of 'employer,' " and courts' interpretations of a definition in one statute are persuasive in interpreting the same definition in the other statute. *Williams v. Banning*, 72 F.3d 552, 553–54 (7th Cir. 1995); see also *E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280 (7th Cir.1995) (employer definitions under the ADEA and Title VI are "essentially interchangeable"). "Identification of an 'employer' under Title VII is a question of federal law." *Carver v. Sheriff of LaSalle Cnty.*, 243 F.3d 379, 382 (7th Cir. 2001)(citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754-55, 118 S.Ct. 2257 (1998)).

Moving for the State of Illinois' dismissal from the ADEA claims, defendants point to the Seventh Circuit's decision in *Hearne v. Bd. of Educ. of City of Chicago*, which held that, in Title VII suits against state entities, the term "employer" "is understood to mean the particular agency or part of the state apparatus that has actual hiring and firing responsibility." 185 F.3d 770, 777 (7th Cir. 1999); see also *Holman v. Indiana*, 211 F.3d 399, 401 n. 1 (7th Cir. 2000); *EEOC v. State of Illinois*, 69 F.3d 167 (7th Cir. 1995). The Seventh Circuit in *Hearne* dismissed the State, among other defendants, because only the Board of Education had the power to hire and fire employees. *Hearne*, 185 F.3d at 777. Defendants claim that, here, the Illinois State Police, rather than the State of Illinois, has the power to hire and fire plaintiffs, and therefore the State is not an "employer" under the ADEA. In response, plaintiffs Cameron, Clements, Holsapple and Kerley maintain that the issue of whether the State of Illinois or the

Illinois State Police is the employer is not ripe for determination on a Rule 12(b)(6) motion as the State may be an employer if it had control over plaintiffs' benefits.[4] On the other hand, plaintiffs Pisoni and Lindsey in response state that they have conceded this aspect of the motion in a prior response and now note that they "have been advised, however, that the other Plaintiffs believe that they can persuade this Court that the State of Illinois is a proper party. If this proves to be true, P&L request that this Court grant P&L leave to withdraw that portion of the prior memorandum so that the State of Illinois remains a Defendant as to P&L as well." (Doc. 27, p. 6).

Based on *Hearne* and *Holman*, the Court finds that the State of Illinois is not an "employer" under the ADEA and dismisses the State of Illinois as a defendant under the ADEA counts as the ISP is the proper defendant. As the Court finds that the State of Illinois is not a proper defendant under the ADEA counts, the Court need not address the State of Illinois' supplemental brief regarding the failure to exhaust administrative remedies.

### ADEA and Retaliation Claims

Defendants argue that plaintiffs failed to adequately plead claims of hostile

---

[4] Plaintiffs cite to *U.S. EEOC v. City of Evanston*, 854 F.Supp. 534 (N.D. Ill. 1994) in support for their argument that the State of Illinois is a proper defendant. In that case, the EEOC brought a suit under the ADEA against the City of Evanston and the State of Illinois, alleging that the terms of a pension plan for city firefighters were discriminatory on the basis of age. The State filed a motion to dismiss, arguing that it had no employer-employee relationship with the firefighters. The court concluded that while the city was responsible for the "hiring, terminating and promoting" of the firefighters, it could not dismiss the State prior to determining if the State "unlawfully interred with Evanston firefighters' access to employment benefits." *Id.* at 537. Clearly, this case is distinguishable from the case at bar and it was decided prior to *Hearne*.

work environment or retaliation under the ADEA. Defendants argue that plaintiffs' allegations fall far from of the severe or pervasive level for the court to find a hostile work environment. The Court disagrees.

Here, plaintiffs have pled that they were targeted by Defendant Robinson and other members of the SWAT team. They also allege that they were harassed and mocked cause of age and that after they complained to the EEOC that they were transferred from the SWAT team and suffered decreases in pay and benefits. Further, they allege that the harassing conduct was targeted at interfering with their work environment by isolating plaintiffs and removing them from the chain of command. Moreover, the joint amended complaint alleges that "Defendants developed mandatory training exercises which were unsafe and which increased the likelihood of injury or death to Plaintiffs with the intent of forcing Plaintiffs off the SWAT team." Clearly, these allegations set forth plausible claims under the ADEA for both hostile work environment and retaliation. Thus, the Court denies this portion of the motion to dismiss.

### Sovereign Immunity and State Law Claims

Under Illinois law, the State of Illinois cannot be made a defendant party to a lawsuit in any court except as provided in the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2008). *See* 745 ILCS 5/1; *Jackson v. Alverez,* 358 Ill.App.3d 555, 559, 294 Ill.Dec. 834, 831 N.E.2d 1159 (2005) (noting the General Assembly reinstated sovereign immunity in the Court of Claims Act). The Court of Claims has exclusive jurisdiction to hear certain matters, including "[a]ll claims against

the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit." 705 ILCS 505/8(d).

Here, plaintiffs have not directly responded to this argument as to the State of Illinois and ISP. The Court deems this failure an admission of the merits of the argument. Alternatively, the Court finds that defendants' argument has merit. Further, the Court notes that both sets of plaintiffs devote their briefs on this issue as to the individual defendants and sovereign immunity.

Under Illinois law, the applicability of sovereign immunity does not depend on the formal designation of the defendants in the action but on the nature of the State employee's conduct and the relief the plaintiff seeks. *Jackson*, 358 Ill.App.3d at 560, 294 Ill.Dec. 834, 831 N.E.2d 1159; *Janes v. Albergo*, 254 Ill.App.3d 951, 956, 193 Ill.Dec. 576, 626 N.E.2d 1127 (1993). Specifically, an action brought against a State employee in his individual capacity is viewed as having been brought against the State where there are: " '(1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State [.]' " *Healy v. Vaupel,* 133 Ill.2d 295, 309, 140 Ill.Dec. 368, 549 N.E.2d 1240 (1990) (quoting *Robb v. Sutton,* 147 Ill.App.3d 710, 716, 101 Ill.Dec. 85, 498 N.E.2d 267 (1986)); *see also Jinkins v. Lee*, 209 Ill.2d 320, 330, 282 Ill.Dec. 787, 807 N.E.2d 411 (2004). In addition, an action

brought against a State employee in his individual capacity will be considered an action against the State where a judgment in favor of the plaintiff could operate to control the actions of the State or subject it to liability. *Currie v. Lao,* 148 Ill.2d 151, 158, 170 Ill.Dec. 297, 592 N.E.2d 977 (1992).

In *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009), the Seventh Circuit held that the plaintiff's state law malicious prosecution claim was barred by sovereign immunity because the plaintiff did not allege that the state officials acted for a purpose unrelated to their employment. *See also, e.g., Turner v. Miller,* 301 F.3d 599, 602 (7th Cir. 2002) (finding that the "district court improperly exercised subject-matter jurisdiction over [the plaintiff's] state law negligence claim" when it was barred by sovereign immunity). More recently, however, the Seventh Circuit has held that "a state employee's sovereign immunity defense does not impact a federal court's jurisdiction over a case." *Fields v. Wharrie,* 672 F.3d 505, 518, (7th Cir. 2012), citing *Rodriguez v. Cook County, Illinois,* 664 F.3d 627, 632 (7th Cir. 2011). Therefore, in light of *Fields* and *Rodriguez,* this Court will not dismiss the state law claims on the basis of sovereign immunity. The Court further finds that even if *Fields* and *Rodriguez* do not apply, plaintiffs have alleged sufficient facts to suggest that the state law claims are not essentially claims against the State. *See, e.g., Richman v. Sheahan,* 270 F.3d 430, 442 (7th Cir. 2001) ("the critical question, then for determining the deputies' entitlement to sovereign immunity is whether the deputies acted beyond the scope of their authority"). For these reasons, the Court

denies the motion to dismiss as to the individual defendants on the basis of sovereign immunity. However, this issue may be raised on summary judgment if appropriate.

### Preemption of State Law Claims by the Illinois Human Rights Act

The Seventh Circuit has succinctly stated when state law tort claims, such as plaintiffs' IIED claims and civil conspiracy claims, are preempted by the IHRA:

> Whether a state-law tort claim is preempted depends on whether the IHRA furnishes the legal duty that defendant was alleged to have breached. If plaintiff's allegations against the defendant implicate *only* a duty provided by the IHRA, such as the duty of employers to refrain from discriminating against employees on the basis of their race or national origin, then the plaintiff's claim is preempted.

*Bannon et al. v. University of Chicago*, 503 F.3d 623, 630 (7th Cir. 2007) (emphasis added) (citations and quotations omitted). In *Naeem v. McKesson Drug Company,* the Seventh Circuit considered whether an IIED claim was preempted by an IHRA sexual harassment suit. 444 F.3d 593, 604 (7th Cir. 2006). Per the *Naeem* Court, the proper inquiry is whether a plaintiff can prove the elements of her state law claim "independent of legal duties furnished by the IHRA," *not* whether the *facts* that support the tort claim "could also have supported a discrimination claim." 503 F.3d at 604. "[I]f the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it." *Id., quoting Krocka v. City of Chicago*, 203 F.3d 507, 516–17 (7th Cir. 2000).

Following the rationale of *Naeem* and *Bannon,* the proper inquiry here is whether or not there are independent basis for the IIED claims and the civil conspiracy claims, apart from the legal duties created by the IHRA.

The alleged conduct in these claims are not preempted by the IHRA. The civil conspiracy claims and the IIED claims incorporate the previous conduct by defendants in the harassment and retaliation along with additional conduct by defendants. The joint amended complaint alleges that plaintiffs were put into conditions wherein the SWAT team became non-operational from a safety point of view. Specifically, "Defendants developed mandatory training exercises which were unsafe and which increased the likelihood of injury or death to Plaintiffs with the intent of forcing Plaintiffs off the SWAT team." This alleged conduct by defendants do not rely on duties under the IHRA to be classified as extreme and outrageous. The conduct alleged is sufficient to support the torts of civil conspiracy and IIED independent of the IHRA.

### Intra-Corporate Conspiracy Doctrine

Defendants argue that plaintiffs' conspiracy claims are barred by the intra-corporate conspiracy doctrine. The intra-corporate conspiracy doctrine provides that, because the acts of an agent are considered to be the acts of the principal, an agent acting within the scope of his employment cannot conspire with the principal nor with other agents. *See Buckner v. Atl. Plant Maint., Inc.,* 182 Ill.2d 12, 24, 230 Ill.Dec. 596, 694 N.E.2d 565 (1998); *Bilut v. Northwestern* Univ., 296 Ill.App.3d 42, 49, 230 Ill.Dec. 161, 692 N.E.2d 1327 (1998);

*Owens–Corning Fiberglas Corp.,* 291 Ill.App.3d 165, 173, 225 Ill.Dec. 482, 683 N.E.2d 985 (1997) ("[A] civil conspiracy cannot exist between a corporation's own officers or employees."); *see also J.C. Whitney & Co. v. Renaissance Software Corp.,* 98 F.Supp.2d 981, 983 (N.D.Ill.2000) ("Illinois law is clear: a civil conspiracy does not exist between a corporations' own officers or employees." (quotation marks omitted)). Here, defendants argue that because all of the named defendants were employees of the ISP at the time of the alleged acts contained in the joint amended complaint, they could not have conspired with one another.

"[C]ourts have recognized two exceptions to the Illinois intra-corporate conspiracy doctrine. The first exception occurs when a separately incorporated conspirator acts of out self-interest rather than in the interest of the principal corporation. Another exception exists when the conspirators act beyond the scope of their official duties." *Georgeson v. DuPage Surgical Consultants, Ltd.,* No. 05 C 1653, 2005 WL 1799281, at *2 (N.D.Ill. July 26, 2005) (citations omitted); *see also Bilut,* 296 Ill.App.3d at 49, 230 Ill.Dec. 161, 692 N.E.2d 1327.

Here, the complaint alleges sufficient facts to permit this court to draw a reasonable inference that defendants were acting in their self-interest rather than in the interest of the ISP and/or defendants were acting beyond the scope of their employment duties. In the joint amended complaint, plaintiffs allege that defendants entered into an agreement to target older members of the SWAT team and to unlawfully deprive them employment based upon their age. Further, plaintiffs allege that defendants created an unsafe working environment and

falsely presented each plaintiff's job performance as less than satisfactory. It is plausible the actions were taken by the defendants to punish plaintiffs. Because, at this stage, this court is obliged to draw all reasonable inferences in plaintiffs' favor, the complaint plausibly sets out that defendants were acting in their own self-interest rather than the interest of the ISP and/or that defendants were acting outside the scope of their duties, and therefore the intra-corporate conspiracy doctrine does not apply.

### Conspiracy Claims

Defendants' second argument for dismissing plaintiffs' conspiracy claims is more fundamental. Even setting aside the intra-corporate conspiracy doctrine, defendants believe that plaintiffs have "failed to plead the requisite facts to support a conspiracy claim." Defendants argue that the joint amended complaint is bereft of any suggestion that defendants were joined in a conspiracy and that plaintiffs fail to make a single allegation that the defendants entered into an agreement.

Plaintiffs are not required to make direct allegations of a conspiracy, but can allege circumstances that add up to a "plausible account of a conspiracy." *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). More precisely, at the pleading stage, plaintiffs are only required to "indicate the parties, the general purpose, and approximate date of the agreement to form a conspiracy so that the defendant has notice of the charges against him." *Estate of Sims ex rel. Sims v. County of Bureau,* 506 F.3d 509, 517 (7th Cir. 2007).

In this case, plaintiffs have met that standard. The parties, purpose, and approximate date of the agreement to form a conspiracy are sufficiently clear to put defendants on notice. The parties are the individual defendants that instructed, encouraged, directed and encouraged activities that resulted in the hostile work environment and the unsafe working conditions.  Further, the complaint alleges that defendants entered into an agreement.  The purpose was to target older members of SWAT team and to unlawfully deprive them of employment on the basis of their age.  The Court finds that plaintiffs' claims are sufficient, at this stage, to survive a motion to dismiss.

### Intentional Infliction of Emotional Distress Claims

To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must allege that (1) defendant engaged in extreme and outrageous conduct; (2) defendant knew or should have known that such conduct would cause severe emotional distress; and (3) the conduct caused plaintiff severe emotional distress.  *See McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988); *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003).  The tort does not cover "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* at, quoting *Restatement (Second) of Torts* § 46, comment d, at 73 (1965).  In determining whether certain conduct is sufficiently outrageous to support an IIED claim, the Illinois Supreme Court has directed that one factor courts should consider is the level of power or authority that the defendant has over the plaintiff.  *Id*.  For a plaintiff to recover, he must show that a "recitation of

the facts to an average member of the community would arouse resentment against the actor and lead him to exclaim: 'Outrageous!' " *Doe v. Calumet City*, 161 Ill. 2d 374, 392 (Ill. 1994). However, abuse of power weighs in favor of finding the conduct extreme or outrageous. *McGrath*, 533 N.E.2d at 810. Furthermore, offensive conduct that is not otherwise extreme and outrageous may become extreme and outrageous if it is retaliatory in nature. *Johnson v. Federal Reserve Bank*, 557 N.E.2d 328, 331 (Ill. App. 1990). To establish the second element, the plaintiff need not allege intent to cause severe emotional distress. A plaintiff will satisfy the second element if he alleges facts to support the inference that the defendant recklessly disregarded that his actions would cause emotional distress. *See Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1997).

Assuming plaintiffs' assertions to be true and drawing all reasonable inferences in their favor, the Court concludes that plaintiffs' allegations are sufficient to withstand the motion to dismiss. Plaintiffs allege that some of the defendants were above plaintiffs in the chain of command and that defendants engaged in a pattern of conduct designed to force plaintiffs to leave the SWAT team. Further, plaintiffs allege that defendants intentionally created an atmosphere wherein plaintiffs' lives were in danger. Lastly, according to plaintiff's joint amended complaint, defendants' conduct did in fact cause distress. At this stage of the litigation, the Court finds that the alleged facts contained in the joint

amended complaint state causes of action against defendants for intentional infliction of emotional distress.

## IV. Conclusion

Accordingly, the Court **GRANTS in part** and **DENIES in part** defendants' motion to dismiss (Doc. 25) and **DENIES as moot** the supplement to the motion to dismiss (Doc. 41). The motion is granted as to the State of Illinois as a defendant in the ADEA claims and the ISP and the State of Illinois as defendants in the civil conspiracy counts and the IIED counts. The Court dismisses with prejudice the State of Illinois as a defendant and dismisses with prejudice ISP as a defendant in the civil conspiracy and IIED claims. For the sake of clarity, the Court **ALLOWS** plaintiffs up to and including July 7, 2013 to file another amended complaint that comports with this Order.

**IT IS SO ORDERED.**

Signed this 6th day of June, 2013.

Digitally signed by David R. Herndon
Date: 2013.06.06 15:05:28 -05'00'

**Chief Judge**
**United States District Court**