IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK CAMERON, BRIAN CLEMENTS, BRIAN HOLSAPPLE, STEVEN KERLEY, RICHARD PISONI and DARREN LINDSEY,

Plaintiffs,

vs.

STATE OF ILLINOIS, ILLINOIS STATE POLICE, GREG ROBINSON, JOSEPH KOLLINS, SCOTT KOERNER, ROB HALEY, LANCE HINKLE, CRAIG DEMERAT and CHARLES TOLBERT,

Defendants.

Case No. 12-cv-678-SMY-RJD

(consolidated with 12-cv-755)

**MEMORANDUM AND ORDER**

Plaintiffs bring this consolidated action alleging violations pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., 28 U.S.C. §1331 and 28 U.S.C. § 1367 (Doc. 53). Defendants moved for Summary Judgment (Doc. 76) and Plaintiffs filed a Response (Doc. 92). For the following reasons, Defendants' motion is **GRANTED** in part and **DENIED** in part.

**BACKGROUND**

According to the Statement of Facts filed by Defendants (Doc. 76-1) and adopted by Plaintiffs (Doc. 92-1), Plaintiffs were employed as members of the Illinois State Police South SWAT Team ("SWAT") until mid-2011 when they voluntarily transferred to other positions (Doc. 76-1, p. 5-4 and p. 52-53). Prior to 2010, SWAT operations consisted primarily of the execution of search warrants (*Id*. at p. 12). In 2010, Illinois State Police command officers

determined that SWAT team members should be trained for special operations in order to respond to terrorism and other critical incidents (*Id*. at p. 15). The military-style techniques and new training procedures demanded faster speeds which Plaintiff Clements (SWAT team leader) and Plaintiff Cameron (SWAT assistant team leader) felt compromised safety (*Id*. at p. 15-16). Around that time, Clements adopted a more authoritative attitude towards the team he led (*Id*. at p. 18) and at times was successful in slowing the team operators to a safer speed (*Id*. at p. 16). On some occasions, Clements felt that team operators circumvented the chain of command by discussing such matters with Defendant Kollins instead of Plaintiff Clements. *Id*.

By the end of 2010, the team had become divided (*Id*. at p. 17). Plaintiffs Pisoni and Cameron testified at deposition that they heard Defendant Robinson state that the way to get rid of operators in the military was to isolate them (*Id*. at p. 29). Defendant Tolbert developed a plan to speak to team leadership only for work purposes, and several Plaintiffs testified at deposition that Tolbert stated "you are either with us or against us" (*Id*. at p. 30-31). Plaintiffs Kerley and Holsapple did not join in Tolbert's plan (*Id*. at p. 31).

Plaintiff Pisoni recalled Tolbert referring to him and Clements and as "old bosses" in the fall of 2010 and believed that this phrase was in reference to the command staff (*Id*. at p. 32). In his deposition, Plaintiff Holsapple testified that Tolbert used the phrase "old guys," but Holsapple did not ask for clarification as to whether Tolbert was referring to operators over the age of 40. *Id*.

Not included in the undisputed statement of facts is Plaintiff Lindsey's deposition testimony regarding a team meeting on June 15, 2011 at which Plaintiffs Kerley, Cameron and Clements were not present but non-team members Defendant Kollins (lieutenant) and Koerner (captain) were present (Doc. 92-12, p. 6). During the meeting, Tolbert and other operators stated

that "SWAT wasn't a retirement home" and that "some of the older guys just need to move on" (*Id*. at p. 8-10). Lindsey further testified that a team member stated that younger guys would like to "climb the ladder" (get promoted) but could not as long as the older guys were on the team (*Id*. at p. 11-12).

Counts I through VI of Plaintiffs' Joint Second Amended Complaint are brought under the ADEA, 29 U.S.C. § 621 *et seq*. and 28 U.S.C. § 1331, against Defendant Illinois State Police. In particular, Plaintiffs Cameron, Clements, Pisoni and Lindsey claim they were victims of age discrimination and retaliation. Plaintiffs Kerley and Holsapple claim they were subjected to retaliation because they refused to participate in discriminatory conduct[1]. All Plaintiffs claim Defendants' actions created a hostile work environment.

Counts VII through XII are civil conspiracy claims wherein Plaintiffs allege that each of the seven individual defendants, in an effort to force Plaintiffs to leave SWAT, entered into an agreement to target older members of SWAT. Plaintiffs further allege that, as a result of this agreement and "tortious conduct," they suffered adverse employment actions, severe emotional distress and impairment of future employment opportunities.

In Counts XIII through XVIII, Plaintiffs bring claims of intentional infliction of emotional distress ("IIED") against each of the seven individual defendants. Specifically, Plaintiffs allege that the intentional acts of the individual defendants in carrying out their plan to push Plaintiffs out of SWAT caused depression, emotional distress, sleep disruptions and anxiety. Additionally, Plaintiff Pisoni alleges in Count XVII that he incurred medical expenses

[1] Plaintiff Kerley was also over the age of 40 at all times relevant to this action. However, Kerley does not allege that he suffered discrimination under the ADEA and brings claims of retaliation only. Further, Plaintiffs' Joint Second Amended Complaint (Doc. 53) does not allege that Holsapple was in the age group protected by the ADEA and alleges in Paragraph 229 that he is protected by the ADEA from retaliation for refusing to participate in Defendants' discriminatory conduct. Accordingly, Holsapple's claims will be considered in the context of retaliation only.

for treatment of his depression and anxiety, including medication and treatment from a cardiologist. Defendants move for summary judgment on all counts.

## DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252. While all facts and inferences are taken in a light most favorable to the non-moving party, the nonmoving party cannot survive summary judgment if it is unable to establish an essential element of their claim on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

***ADEA Discrimination and Retaliation: Counts I – VI***

The ADEA prohibits an employer from discharging or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). "In general, the ADEA provides coverage for private, state, and federal employees who are forty years of age and older." *Levin v. Madigan,* 692 F.3d 607, 615 (7th Cir. 2012). The Act "incorporates some features of both Title VII and the Fair Labor Standards Act … which has led [the Supreme Court] to describe it as 'something of a hybrid.'" *Id., citing McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352, 357 (1995). Here, Defendants contend that Plaintiffs did not suffer age discrimination, did not suffer adverse employment actions sufficient to maintain an ADEA claim, do not have recoverable damages under the ADEA, cannot establish a basis for liability from the Illinois State Police and have no proof of retaliation.

To survive summary judgment on a claim of *discrimination* under the ADEA, a plaintiff must "show evidence that could support a jury verdict that age was a but-for cause of the employment action." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012). A plaintiff must also show that they suffered a materially adverse employment action as a result of the discriminatory conduct. *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234-35 (7th Cir. 2014). "Unbearable changes in job conditions, such as a hostile work environment or conditions amounting to a constructive discharge" qualify as adverse employment actions to support a claim of discrimination in violation of the ADEA. *Barton v. Zimmer, Inc.*, 662 F.3d 448, 454 (7th Cir. 2011). Moreover, a hostile work environment may be created by pervasive harassment that "alter[s] the conditions of employment and create[s] an abusive working environment." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir.2005). The relevant inquiry is whether the workplace was

both subjectively offensive (perceived by a plaintiff as offensive) and objectively offensive (a reasonable person would find it hostile), as well as whether the conduct unreasonably interfered with the plaintiff's work performance. *Id*.

To establish *retaliation* under the ADEA, a plaintiff must show that he "engaged in statutorily protected activity, that he suffered a materially adverse action, and that the two are causally related." *Barton*, 662 F.3d at 455, *citing Horwitz v. Bd. of Educ.*, 260 F.3d 602, 612 (7th Cir.2001). The Seventh Circuit has held that "an objection to discrimination on the basis of age" qualifies as a protected activity. *Smith v. Lafayette Bank & Trust co.*, 674 F.3d 655, 658 (7th Cir. 2012). As with claims of discrimination, "retaliation must be a but-for cause of a materially adverse action, not merely a contributing factor." *Id*. To constitute a materially adverse action, it "must be severe enough to dissuade a reasonable employee from exercising statutory rights." *Barton*, 662 F.3d at 456.

For years, courts in this Circuit, when analyzing summary judgment motions in employment discrimination cases, held that employees may prove discrimination through either an "indirect" or "direct" method of proof. However, the Seventh Circuit recently rejected this two-fisted evidentiary approach. In *Ortiz v. Werner Enterprises, Inc.*, No. 15-2574, 2016 WL 4411434 (7th Cir. Aug. 19, 2016), the Court expressly held that the indirect versus direct methods of proof should no longer be recognized by district courts and that the appropriate standard "is simply whether the evidence as a whole would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect." *Id.* at 4.

In this case, Plaintiffs address both the direct and indirect methods of proving discrimination in opposing Defendants' motion. Consistent with *Ortiz* however, the Court will examine all proffered relevant evidence as a whole to determine whether Plaintiffs have established the required elements necessary to survive summary judgment.

***Age Discrimination***

Plaintiffs claiming discrimination under the ADEA must show (1) they are members of the protected class, (2) they suffered the requisite adverse action, and (3) a rational jury could find that the adverse action was due to age. Here, it is undisputed that Plaintiffs Pisoni, Lindsey, Cameron and Clements were over the age of 40 at the time of the alleged discrimination and were therefore members of the protected class. However, it is unclear whether Plaintiffs allege that their reassignments alone qualify as adverse actions, or whether the alleged hostile work environment qualifies as adverse action because it led to a type of constructive discharge. Based on the content and organization of Plaintiffs' Response (Doc. 92), the Court construes Plaintiffs' hostile work environment argument as support for their claims of discrimination and retaliation to satisfy the element of adverse employment action, rather than as an independent claim.

Plaintiffs argue that a hostile work environment was created by pervasive harassment and isolation that altered the conditions of their employment and created an unsafe and abusive working environment. According to Plaintiff Holsapple, as a result of Defendants actions, the team was no longer cohesive and he and other plaintiffs "left the team because it wasn't a safe place for us" (Doc. 92-16, p. 16). Further, there was a perception among Plaintiffs that this was an intentional effort to isolate and push older members off the team (Doc. 92-4, p. 1; Doc. 92-10, p. 1, 23). When offered a return to SWAT, Plaintiffs chose to remain in their reassigned locations due to safety concerns. This evidence supports an inference that the changes in job

conditions became unsafe and hostile to the point that Plaintiff's chose to be reassigned, which satisfies the criteria for an adverse employment action for summary judgment purposes.

Plaintiffs must also show that the adverse action was due to age. In that regard, Plaintiffs point to a statement that was not only allegedly verbalized by two Defendants, but was also captioned on a photograph in one defendant's office: "This ain't [sic] no retirement home" (Doc. 92-32). Defendants assert that this statement was not age-related, but was only intended to motivate team members to "not rest on their laurels, but keep striving to do better" (Doc. 76, p. 11). Further, Defendants claim that statements made referring to "older guys on the team" and "old bosses" did not refer to age, but instead reflected a distinction between "old and new."

It has long been held that a "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all of the evidence in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Reid v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir.2014) (*quoting Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir.2005)). Here, a genuine issue of material fact exists as to whether the harassment and isolation Defendants allegedly subjected team members to, including Plaintiffs Cameron, Clements, Pisoni and Lindsey was based on age. Accordingly, Defendants are not entitled to summary judgment on Plaintiffs' age discrimination claims.

***Retliation***

In support of their retaliation claim, Plaintiffs have proffered testimonial evidence which is insufficient for summary judgment purposes. Plaintiffs Kerley and Holsapple testified that they were isolated by the younger team members after refusing to join them in forcing Clements, Pisoni and Lindsey out. However, this fact does not create a material issue of fact as to whether

the named defendants retaliated against Plaintiffs. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiffs' retaliation claims.

***State Law Claims: Counts VII – XVIII***

Defendants first argue that Plaintiffs' state law claims are barred by sovereign immunity as the state is the real party in interest. "Sovereign immunity affords no protection . . . when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority…" *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990). In order to determine whether a claim against a state employee is actually one against the state, and thus barred by sovereign immunity, it must be the case that "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters originally within the employee's normal and official functions of the State." *Id*. (quoting Robb v. Sutton, 498 N.E. 2d 267 (Ill. App. 1986)). Even if these criteria are not satisfied, a claim may still be considered against the state if "a judgment for the plaintiff could operate to control the actions of the [s]tate or subject it to liability." *Sellers v. Rudert*, 918 N.E.2d 586, 591 (Ill. App. 2009).

In this case, Plaintiffs do in fact allege that, by discriminating based on age, the individual defendants acted beyond the scope of their authority and breached their duty to avoid taking discriminatory actions based on age. Futher, the actions complained of do not fall within the Defendants' normal and official functions on behalf of the State. Therefore, sovereign immunity does not bar Plaintiffs' state law claims.

***Civil Conspiracy***

Defendants assert that a claim for civil conspiracy is not an independent cause of action under either Federal or Illinois law. Defendants are correct. "[C]onspiracy is not an independent tort: the conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails." *Coghlan v. Beck*, 984 N.E.2d 132, 151 (Ill. App. 2013). The Court notes that Plaintiffs did not allege a specific underlying tort. While Defendants assume that the conspiracy allegations are based on tortious interference with contractual relations, Plaintiffs have failed to articulate the underlying tort that would allow the civil conspiracy claim to go forward.

Plaintiffs' Amended Complaint alleges that "Defendants entered into an agreement to target older members of SWAT team and to unlawfully deprive them of employment on the basis of their age." (Doc. 53, p. 11). This seems to suggest Plaintiffs are pursuing a claim for civil conspiracy based on age discrimination under the ADEA. Plaintiffs concede, however, that "[t]he ADEA contains no provision relating to conspiracies to violate the act." (Doc. 92 p. 7). Accordingly, Plaintiffs' civil conspiracy claim cannot survive summary dismissal.

***Intentional Infliction of Emotional Distress***

Under Illinois law, there a three elements necessary to prove a claim for Intentional Infliction of Emotional Distress: "(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (1988)). Illinois courts are hesitant to find that a plaintiff has a claim for IIED in employment situations, since "everyday job stresses should not give rise to a cause of action for [IIED]." *Vickers v. Abbott*

*Labs.*, 719 N.E.2d 1101, 1115 (1999) (quoting *Miller v. Equitable Life Assurance Soc'y*, 537 N.E. 2d 887 (1989)).

Whether conduct is extreme and outrageous is judged on an objective standard, based on all the facts and circumstances of the particular case. *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (2000). Liability only attaches in circumstances where the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Finance Corp. v. Davis,* 360 N.E.2d 765, 767 (1976) (quoting Restatement (Second) of Torts § 46, Comment *d* (1965)). The distress inflicted must be so severe that no reasonable person could be expected to endure it. *Graham*, 742 N.E.2d at 866.

Determining whether conduct is extreme and outrageous requires a consideration of factors including "the degree of power or authority which a defendant has over a plaintiff" (abuse of power), whether the defendant believes he is "pursuing a legitimate objective," and whether the plaintiff is particularly susceptible to emotional distress. "[B]ehavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional turmoil." *Honaker*, 256 F.3d at 491-92.

Illinois courts have found extreme and outrageous conduct in the employment context where the employer severely abuses its power, but courts generally will not classify such conduct as "extreme and outrageous" unless the conduct goes "well beyond the parameters of the typical workplace dispute." *Id.* at 491. Additionally, "greater latitude is given to a defendant pursuing a reasonable objective even if that pursuit results in some amount of distress for a plaintiff." *Id.* A legitimate objective, however, does not allow a defendant to pursue that objective by outrageous means. *Graham*, 742 N.E.2d at 867.

Defendants assert that the alleged conduct was by no means "extreme and outrageous." Plaintiffs failed to address this argument in their response, instead opting to respond only to Defendants' sovereign immunity argument. Nevertheless, a review of the record indicates that Defendants' alleged conduct was not so extreme as to go "beyond all bounds of decency" as the law requires and Plaintiffs have produced no evidence to the contrary. Accordingly, Defendants' motion is granted as to Plaintiffs' intentional infliction of emotional distress claims.

## CONCLUSION

Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's claims for age discrimination in violation of the ADEA set forth in Counts I-VI for claims of age discrimination in violation of the ADEA. The motion is **GRANTED** as to all remaining counts including those portions of Counts I-VI alleging retaliation. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of this case.

**IT IS SO ORDERED.**

**DATED: November 21, 2016**

**s/ Staci M. Yandle__**
**STACI M. YANDLE**
**DISTRICT JUDGE**