IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD PISONI, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 12-CV-678-SMY-DGW |
| STATE OF ILLINOIS, et al., | ) (consolidated with 12-CV-755) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court for consideration of the Motion for Attorneys' Fees (Doc. 153) filed by Plaintiffs Richard Pisoni, Darren Lindsey and Mark Cameron. Defendant Illinois State Police ("ISP") filed an opposition to the Motion (Doc. 172). For the following reasons, the Motion is **GRANTED IN PART**.

### Background and Legal Standard

A seven-day jury trial was held beginning on September 5, 2017. The jury returned a verdict finding that ISP was liable to each plaintiff for willful violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The ADEA's enforcement system incorporates provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (See *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 74 (2000) (stating that the ADEA "incorporates the FLSA's enforcement provisions, and that those remedial options operate together with § 626(c)(1)."). One of those provisions states that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

"The most useful starting point for determining the amount of a reasonable fee is the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (superseded by statute on other grounds). This calculation is generally referred to as the 'lodestar' amount. "The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). When determining the reasonable number of hours, the court should exclude hours that are "excessive, redundant or otherwise unnecessary." *Hensley*, 461 U.S. at 434. There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (citations omitted).

In the instant case, two law firms are seeking payment of their fees and costs. Darrell Dunham seeks $174,450 in attorney's fees. (Doc. 153 at ¶ 3). This request is calculated based on claimed billable rates of $400 per hour for Dunham himself (totaling $170,720 for 429.8 hours) and $100 per hour for an unidentified paralegal (totaling $3730). (Affidavit of Darrell Dunham, Doc. 153-2). Dunham is also seeking costs of $10,817.74 and witness fees of $525 (Id. at pp. 20, 21). Attorney Eric Evans, who represented Plaintiff Cameron (as well as several dismissed parties) from April 2012 until his withdrawal in November 2013, is seeking $23,525.40 in attorney's fees, based on his "standard and customary rate at the time" of $250 per hour and his associate Dawn O'Leary's rate of $185 per hour. (Affidavit of Eric Evans, Doc. 153-1 at ¶¶ 5, 6). Evans is also seeking costs of $2,975. (Id. at ¶ 6).

Dunham also submitted his engagement letter with Mark Cameron, which provides that Dunham will be paid the greater of a contingent fee of 33% of a final settlement (increasing to 40% if the case resolves after appeal) or "his hourly rate of $200.00 per hour[.]" (Doc. 153-2 at 25). Dunham states that his "other three plaintiffs [the third presumably meaning Brian

Clements, who was dismissed on Day 4 of trial] signed identical contracts, except the hourly rate therein stated was $200 per hour." (Doc. 153-2 at ¶ 13).[1]

## Discussion

### Lodestar Calculation

First, the Court must determine the applicable "reasonable rate" for each attorney's work. "A reasonable hourly rate should reflect the attorney's market rate, defined as the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (quotations omitted). The party seeking payment "bears the burden of proving the market rate. The attorney's actual billing rate for comparable work is considered to be the presumptive market rate." *Id.* (citation omitted). "A private fee arrangement between plaintiff and counsel does not serve as a ceiling on the amount of attorneys' fees that the prevailing plaintiff may recover." *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989) (citing *Blanchard v. Bergeron*, 489 U.S. 87 (1989)). However, such an agreement "can still be relevant as evidence of a reasonable fee." *Id.* "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating attorney's fee expectations when he accepted the case." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (1987) (quotation omitted).

Here, Dunham asserts that he is due $400 per hour for his work, but submits nothing in the way of relevant admissible evidence that this is a reasonable rate in the Southern Illinois area for similar cases. He states that his customary rates are $300 per hour for bankruptcy matters and $350 per hour for black lung cases. (Doc. 153-2 at ¶ 7). However, this was not a bankruptcy

---

[1] Given that $200 is the hourly rate provided in the Cameron letter as well, the Court is unclear what Dunham is drawing as a distinction.

or black lung case.

Dunham asserts that he "called several lawyers who do civil rights litigation in the Southern District of Illinois" to determine their pay rates, which he states ranged from $250 to $400 per hour. (Id. at ¶ 8). This is far too slender a reed to rest a disputed rate upon. He also states that he is "aware of a study of average rates for partner level attorneys to be $604 per hour." (Id. at ¶ 13). This appears to be drawn from the "National Law Journal" survey appended to the Memorandum in Support of the fee application. (Doc. 154 at 10-20) This survey covers large law firms across the country, and does not appear to distinguish between transactional and litigation work, nor between subject areas. As such, it has little to no relevance to the reasonable market rate.

In the Memorandum supporting the attorney's fee requests, Dunham suggests that his $400 stated rate is appropriate because it is the "midpoint between the low of $200 per hour specified in one client contract and the high sum of $600 per hour resulting from aggregating all three contracts' stated hourly rates." (Doc. 154 at 3). The Court rejects this approach. Aggregating the fee agreements and charging each Plaintiff $200 for work which is not broken down by individual client (especially when half the original group of clients was subsequently dismissed) is tantamount to billing a client for work attributable to another client.[2]

Instead, the Court relies primarily on the plain language of the client engagement letters to determine Dunham's reasonable rate. The phrase "his hourly rate of $200 per hour" used in the engagement letter suggests that Dunham's reasonable hourly rate for this type of litigation is $200. This conclusion is bolstered by the interim report on attorney's fee claimed by Dunham in the Final Pretrial Order, in which he represented that Plaintiffs' attorney's fees "as of the pretrial

---

[2] Had Brian Clements' claim survived the Rule 50 motion at the close of Plaintiffs' evidence, aggregating the billing rates for each would suggest Dunham could charge $800 per hour for the same amount of work—a clearly unreasonable result.

conference [July 31, 2017]" were $42,500. (Doc. 124 at p. 14). Plaintiffs state that this figure was "taken from the running [sic] as of July 28, 2017." (Doc. 173 at 2). According to Dunham's time records, his recorded billable hours prior to July 28, 2017 were slightly more than 225 hours. Dividing $42,500 by 225 hours yields a rate slightly below $200 per hour. It therefore appears that Dunham himself used a $200 per hour rate in calculating the $42,500 "running total" submitted in the Final Pretrial Order. While not dispositive, the engagement letters and Plaintiffs' counsel's own apparent use of the $200 per hour rate in arriving at his interim estimate of fees incurred are "highly relevant" to determination of a reasonable fee rate of $200. Dunham has advanced no convincing argument that his contracted rate is outside the range of reasonable fees. Therefore, the Court finds $200 per hour the appropriate rate to use for Dunham in the lodestar calculation. Finally, as there appears to be no challenge to the rate assigned to Dunham's paralegal, the Court finds $100 per hour reasonable and appropriate. (Doc. 153-2 at 13-18).

Evans states that his customary hourly rate for such litigation is $250 per hour, a figure that Defendant does not dispute. (Docs. 153-1 at ¶ 5; 172 at 10). Similarly, there is no challenge to his associate O'Leary's hourly rate of $185 per hour. (Doc. 153-1 at ¶5). The Court finds both rates to be reasonable for purposes of lodestar calculation.

Next, the Court must determine the reasonable number of hours to be used in the lodestar calculation. In that vein, while "it is generally unrealistic to expect a trial court to evaluate and rule on every entry in an application," *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986), several entries do stand out as worthy of being excluded. First, Dunham claims 3.5 hours spent on filing a Motion to Remand, which was unsuccessful and which he concedes "an argument could be made that [Plaintiffs] are not entitled to attorneys' fees for it." (Doc 154 at

6). Defendant makes such an argument, and the Court agrees with it. An ADEA case is so clearly removable on federal-question jurisdiction (28 U.S.C. § 1331) that Plaintiffs' attempt to have it remanded was an unreasonable expenditure of time. Additionally, there is no indication the EEOC Charge drafted and sent on April 9, 2012 (shortly before the April 24, 2012 file-stamp on the original Complaint (Doc. 2-2 at 7) and two days after Dunham's own records show that he filed it) played any part in this litigation. As such, the 1.5 hours spent on the EEOC Charge will also be excluded.

Second, O'Leary's notation of 2.4 hours working with "Dunham's office" on the Amended Complaint on June 21, 2013 is unsupported by any corresponding time record for either Dunham or his paralegal. While this may be an issue of timekeeping by Dunham's office, the Court cannot award compensation when the records do not add up. Therefore, O'Leary's compensable time will be reduced by 2.4 hours.

The Court must also evaluate the reasonable number of hours compensable for Dunham's paralegal. "The only inquiry for requested paralegal fees should be whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996). Defendant has identified 24.6 hours of paralegal time which it argues was secretarial in nature. (Doc. 172-1). But the Court is disinclined to nitpick an attorney's staffing decisions or assignments of responsibilities. While tasks such as calculating response dates or preparing exhibits for trial might be appropriate for a skilled and experienced legal secretary in some circumstances, such tasks may also require the professional judgment of a paralegal to ensure the job is done right. Therefore, the Court will award the full $3730 in paralegal fees requested.

In total, the lodestar calculations yield $84,960 for Dunham (424.8 compensable hours at $200 per hour), $3750 for Dunham's paralegal, $15,675 for Evans (62.7 hours at $250 per hour), and $ 7,344.50 for O'Leary (39.7 hours at $185 per hour).

## Adjustment of Lodestar Amount

Defendant urges an unspecified reduction in the award due to an alleged low degree of success compared with what Plaintiffs were originally seeking. Litigation began with six plaintiffs variously asserting claims for violation of the ADEA, retaliation, intentional infliction of emotional distress and conspiracy. By the end of trial, half the plaintiffs had been dismissed, and the claims had been pared down to violation of the ADEA. In the Final Pretrial Order, the four plaintiffs remaining at that point asserted damages of $918,548.22. Ultimately, Cameron, Pisoni and Lindsey were awarded a total $222,170.22 by the jury, or 24.19% of the claimed damages.

The Court has discretion to raise or lower the presumptive attorneys' fees calculated using the lodestar method, especially in view of partial or limited success. *Hensley*, 461 U.S. at 436–37.

> [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters. If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.

*Id.* at 435–36. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 36–37.

In civil litigation, especially in the employment context where alleged wrongs can be

brought under numerous theories of liability, it is common for a number of claims to fall by the wayside over the course of the case. This alone is not a sign of failure meriting a reduction in the calculated lodestar amount. *See Bankston v. State of Ill.*, 60 F.3d 1249, 1256 (7th Cir. 1995) ("[F]ailing to obtain every dollar sought on behalf of his clients does not automatically mean a lawyer's fees should be reduced."). In this case, the rate of attrition for both plaintiffs and claims was high and Plaintiffs' counsel went down a number of dead-end alleys during litigation and trial. However, the case was reasonably complex, and the nature of civil rights litigation is such that a successful claim often rises on a pile of unsuccessful ones. While, a number of depositions were taken of individuals who did not testify at trial, that does not mean the depositions were unnecessary or unreasonable. The Court cannot say that an across-the-board cut of attorneys' fees is justified. Therefore, the presumptively reasonable attorneys' fee award under the lodestar calculation will stand.

## Costs and Expenses

The FLSA remedies incorporated by the ADEA also allow for recovery of costs. The shifting of federal litigation expenses is generally governed by statute or contract. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) . 28 U.S.C. § 1920 allows taxation of costs for:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The FLSA does not expand on this list. *Cf.* 42 U.S.C. § 1988(c) (allowing prevailing parties in other civil rights actions to recover expert fees as well). Even if authorized by statute, however, "a cost must be both reasonable and necessary to the litigation for a prevailing party to recover it." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). "[T]he ultimate decision to award costs is within the district court's discretion. *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir. 1991) (citations omitted).

Defendant points to 28 U.S.C. § 1924, which provides that a party seeking costs by application must "attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." Although both attorneys submitted affidavits regarding their time and expenses, only Dunham's addresses the correctness and necessity of any expenses, and then only as to the hiring of a jury consultant/observer for $500. (Docs. 153-1 and 153-2). Plaintiffs provide no statutory authority to suggest that a "jury consultant" is a compensable aspect of either costs or attorneys' fees. At best, a jury consultant may be considered a non-testifying expert, whose fees are not compensable under the FLSA remedial scheme. Accordingly, all other costs except the filing fees (which are reasonable, necessary and proper on their face) will be disallowed.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Attorney's Fees (Doc 153) is

**GRANTED IN PART.** The Court hereby **AWARDS** Plaintiffs $111,729.50 in attorneys' fees and $832 in costs. The Clerk of the Court is **DIRECTED** to amend the Judgment accordingly.

**IT IS SO ORDERED.**

**DATED: August 30, 2018**

s/ Staci M. Yandle
**STACI M. YANDLE**
**United States District Judge**